UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| International Association of Sheet Metal, Air, Rail and Transportation Workers, Transportation Division, | CASE NO. 1:19 CV 228 |
| | JUDGE DONALD C. NUGENT |
| Petitioner/Respondent, | |
| | MEMORANDUM OPINION AND ORDER |
| vs. | |
| Port Authority Trans-Hudson Corporation, | |
| Respondent/Petitioner. | |

This matter is before the Court on the Parties' Cross Motions for Summary Judgment. Petitioner International Association of Sheet Metal, Air, Rail and Transportation Workers, Transportation Division ("SMART-TD") filed this action to enforce the Arbitration Award issued on November 7, 2018 by Public Law Board No. 7551 ("Board") pursuant to the Railway Labor Act ("RLA"), (45 U.S.C. § 153). (ECF #15). Respondent Port Authority Trans-Hudson Corporation ("PATH") moves for summary judgment vacating the Arbitration Award. (ECF #17) For the reasons that follow, Petitioner SMART-TD's Motion for Summary Judgment to enforce the Arbitration Award (ECF #15) is granted and the Motion of Respondent PATH for Summary Judgment vacating the Arbitration Award (ECF #17) is denied.

### PROCEDURAL AND FACTUAL BACKGROUND[1]

This action involves a grievance filed by SMART-TD on behalf of its member David

---

[1] The factual background is taken from the Parties' filings and is based upon the administrative record that the parties filed with the Court by joint stipulation on August 28, 2019. (ECF #14)

Shenberger. Mr. Shenberger was employed as a tower operator by PATH from 1983 to 2009. Mr. Shenberger retired from PATH and accepted a disability annuity under the Railroad Retirement Act on July 1, 2009. Upon his retirement, Mr. Shenberger received retiree pension benefits, healthcare benefits and life insurance benefits. In 2016, Mr. Shenberger sought to re-enter employment with PATH as a tower operator and the Human Resources Department undertook the process of vetting his candidacy. On or about March 10, 2017, Mr. Shenberger was re-employed by PATH as a tower operator. Upon his return to work, Mr. Shenberger asserted that PATH refused to grant him the appropriate amount of sick time and vacation leave under the applicable collective bargaining agreement ("CBA") of someone with his length of service, despite granting him all other benefits, including the pay level of someone with 16 years of seniority.

SMART-TD filed a grievance on behalf of Mr. Shenberger which progressed to arbitration in accordance with the terms of the CBA. Public Law Board No. 7551 (the "Board"), consisting of the Chairman and Neutral Member, a Union Member and a Carrier Member, was convened to hear Mr. Shenberger's grievance, along with other disputes between the Parties. Following the Parties' submissions, on November 7, 2018, the Board issued an Award in Public Law Board No. 7551 Case No. 8 sustaining Mr. Shenberger's claim and ordering that Claimant shall be made whole in accordance with the terms of the CBA. The Board further ordered that the Carrier shall exercise its best efforts to comply with the terms of this Award within 60 days. The Carrier Member of the Board dissented from the Award.

PATH has refused to comply with the Award. On January 30, 2019, SMART-TD filed its Petition to Enforce the Award and for reasonable attorneys fees in this Court. PATH has asserted

a counter-claim seeking to vacate the Award. The Parties have submitted an agreed Stipulated Administrative Record and agree that there are no disputed questions of fact.

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## STANDARD OF REVIEW OF AN ARBITRATION AWARD UNDER THE RAILWAY LABOR ACT

The RLA governs disputes between management and labor in the railroad industry. *See* 45 U.S.C. §§ 151, 153. Congress included a mandatory arbitral mechanism in the statute to efficiently resolve labor disputes, promote stability in the relationship between rail companies and their employees, and keep such disputes out of the courts. *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 94, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978). The RLA procedure provides for settlement of so-called minor disputes through contractual grievance procedures.[2] *See* 45 U.S.C. § 152 First, Second. Failure to resolve a minor dispute through such procedures triggers compulsory and binding arbitration by the National Railroad Adjustment Board (NRAB) or a

---

2

Minor disputes concern the interpretation of existing CBAs. The dispute in this action is a minor dispute.

3

privately established "special adjustment board," such as the Public Law Board in this case. See 45 U.S.C. § 153 First (i); 45 U.S.C. § 153 Second. NRAB awards are "final and binding" on all parties. 45 U.S.C. § 153 First (m).

A party may appeal an arbitration decision, 45 U.S.C. § 153 First (q), but the court's review is "among the narrowest known to the law," *Airline Prof'ls Ass'n of Int'l Bhd. of Teamsters, Local Union No. 1224, AFL–CIO v. ABX Air, Inc.*, 274 F.3d 1023, 1030 (6th Cir.2001) (citation omitted). Court review of NRAB awards is limited to three specific grounds: "(1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption." *Sheehan*, 439 U.S. at 93, 99 S.Ct. 399 (citing 45 U.S.C. § 153 First (q)). The same standards that govern review of an NRAB award apply when a court reviews an award issued by a "special adjustment board." *Cole v. Erie Lackawanna Ry. Co.*, 541 F.2d 528, 531–32 (6th Cir.1976). Finally, in reviewing the decisions of RLA-created arbitration boards, the Sixth Circuit has instructed courts to "bear in mind the very narrow standard of review that federal courts are to employ when reviewing [labor] arbitration awards." *ABX Air, Inc.*, 274 F.3d at 1030 (applying the standard for federal court review of labor arbitration awards to a dispute under the RLA to determine whether the arbitrator's award "fails to draw its essence from the terms of the collective bargaining agreement").

More recently, the Sixth Circuit, has held that judicial review of an arbitration award under the RLA is confined to deciding whether a "procedural aberration" was present in the arbitration process, and must not focus on matters of substantive interpretation and the outcome an arbitrator reached. *Michigan Family Res., Inc. v. Serv. Employees Int'l Union Local 517M*,

475 F.3d 746, 753 (6th Cir. 2007) . Under *Michigan Family* a court must defer to the arbitrator's decision unless the arbitrator 1) acted outside his authority by resolving a dispute not committed to arbitration; 2) committed fraud, had a conflict of interest, or otherwise acted dishonestly in issuing the award; or 3) was not even "arguably construing or applying the contract" in resolving legal or factual disputes. *Id.* The Sixth Circuit emphasized that "[a]n arbitrator does not exceed his authority every time he makes an interpretive error; he exceeds that authority only when the [CBA] does not commit the dispute to arbitration." Id. at 756.

In *Brotherhood of Locomotive Engineers and Trainmen v. United Transp. Union*, 700 F.3 891, 901-02 (6th Cir. 2012), the Sixth Circuit emphasized the narrowness of judicial review under the RLA:

> *Michigan Family* emphasized that "only the most egregious awards [would] be vacated" under the "arguably construing" standard. *Id.* at 753. **Properly articulated, the analysis focuses on a single question: did "the arbitrator appear[ ] to be engaged in" interpreting the agreement or agreements before him?** *Id.* **If so, the court's inquiry ends. If it is unclear, the court "will presume that the arbitrator was doing just that."** *Id.* With the window so narrowed, a court may vacate an award only in the "rare exception" when the arbitrator was "so ignorant of the contract's plain language" that "any contention that the arbitrator was construing the contract" is "implausible." *Id.* (internal quotations, internal citation, and alteration omitted). Put otherwise, if the arbitrator's construction is plausible, it must not be disturbed. Accordingly, the outer limits of the "arguably construing" inquiry are reached only when the arbitrator's decision is " 'so untethered to' " the agreements at issue, *Id.* at 752 (quoting *Garvey*, 532 U.S. at 512, 121 S.Ct. 1724 (Stevens, J., dissenting)), that he enters "the forbidden world of 'effectively dispensing his own brand of industrial justice,' " *Id.* (citation, alteration, and internal quotations omitted).

*Bhd. of Locomotive Engineers & Trainmen*, 700 F.3d at 901–02 (emphasis added.)

## DISCUSSION

In the Award at issue here, the Board states that the Claimant's employment is covered by the Agreement between PATH and UTU Tower Group, including the vacation and sick leave allowances set forth under Article VIII-B and Article IX-A. The Board quotes parts of Article VIII-B in pertinent part as follows:

> 2. In determining the vacation allowance to which an employee is entitled, length of service shall be measured from the initial date of uninterrupted employment by PATH or any of its predecessors. For this purpose, sick leave in excess of six (6) months (unless by reason of on-job injury) and leave of absence in excess of thirty days shall not be counted.

Award at 2 (ECF #1-1) The Board goes on to state that Mr. Shenberger served in an uninterrupted employment beginning in 1993, his initial hire date, and ending in 2009 and that under the clear language of Article VIII, the service time between 1993 and 2009 must be counted for vacation allowance purposes. *Id.* at 3. The Board also notes that Article IX, Section A (Sickness and Other Employee Welfare Benefits) provides substantially identical language as detailed in Article VIII above, and thus Mr. Shenberger is also entitled to this prior service time for sick leave purposes. *Id.*

PATH does not seek to vacate the Award based upon the first two *Michigan Family* factors– *i.e.*, that the Board 1) acted outside its authority by resolving a dispute not committed to arbitration; or 2) committed fraud, had a conflict of interest, or otherwise acted dishonestly in issuing the award. Rather, PATH argues that the Award should be vacated for the third reason– that the Board was not even "arguably construing or applying the contract" in resolving legal or factual disputes. Specifically, PATH argues that the Board ignored or misunderstood the plain language of the applicable CBA provisions and that the Award created a contract term that did

6

not exist. PATH presents an alternative way that the relevant CBA provisions should be interpreted. However, what PATH's position simply asserts is that the Board's interpretation of the relevant CBA provisions was, in its opinion, incorrect. Under the relevant standard of review, there is only one question the reviewing court must ask: "did the arbitrator appear to be engaged in interpreting the agreement or agreements before him? If so, the court's inquiry ends. If it is unclear, the court "will presume that the arbitrator was doing just that." *Bhd. of Locomotive Engineers & Trainmen*, 700 F.3d at 901–02. Here it is clear that the Board was engaged in interpreting the CBA. While the Board's interpretation of the relevant contract provisions may or may not be correct, this case is not the "rare exception" when the arbitrator was "so ignorant of the contract's plain language" that "any contention that the arbitrator was construing the contract" is "implausible." *Id*. Rather, the Board's decision in this case is supported by its citations to the Agreement and does not show such "ignorance of the contract's plain language" as to support any finding that the Board was not interpreting the contract. Here the Board's decision is, on its face, tethered to the provisions of the contract at issue. Accordingly, the Arbitration Award shall be enforced.

## CONCLUSION

For the reasons set forth above, Petitioner SMART-TD's Motion for Summary Judgment is granted and its petition to enforce the Board's Award is granted. (ECF#15) Respondent/Petitioner PATH's Motion for Summary Judgment is denied and its request to vacate the Board's Award is denied. (ECF #17)

Accordingly, PATH is hereby ordered to comply with the terms of the Board's Award. Petitioner SMART-TD shall file its request and supporting material for attorneys' fees by

December 18, 2019. Any opposition shall be due by January 18, 2020.

    IT IS SO ORDERED.

                                              /s/ Donald C. Nugent
                                              DONALD C. NUGENT
                                              UNITED STATES DISTRICT JUDGE

DATE: November 18, 2019